**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
MARIA DILORENZO,                           :
                                           :   Case No.:
                              Plaintiff,   :
                                           :
              v.                           :   **COMPLAINT**
                                           :
J. CREW GROUP, LLC, MICHAEL                :
NICHOLSON and LIBBY WADLE, in their        :   **Jury Trial Demanded**
individual and professional capacities,    :
                                           :
                              Defendants.  :
-------------------------------------------------------X

Plaintiff Maria DiLorenzo ("Ms. DiLorenzo" or "Plaintiff"), by and through her

attorneys, Wigdor LLP, as and for her Complaint against Defendants J. Crew Group, LLC ("J.

Crew" or the "Company"), Michael Nicholson, in his individual and professional capacities, and

Libby Wadle, in her individual and professional capacities, (together, "Defendants") alleges as

follows:

**PRELIMINARY STATEMENT**

1.      J. Crew promotes itself as a good corporate citizen.  It claims a commitment to

"fair and decent working conditions, the freedom of opinion and expression" and "an accessible

and inclusive environment for everyone."  Its Chief Executive Officer ("CEO"), Libby Wadle,

proclaimed that it was "crucial" that the Company's "spaces are equitable and welcoming for

everyone."

2.      This soaring language is, of course, hollow market-speak.  In fact, J. Crew cares

little about the plight of its employees, especially those with disabilities.

3.      In June 2020, Ms. DiLorenzo, the Company's General Counsel, woke up unable

to hear from her right ear and unable to walk unassisted.  She was eventually diagnosed with

1

Sudden Sensorineural Hearing Loss ("SSHL"), a disabling medical condition that, among other things, rendered her deaf in one ear and caused vertigo.  She needed simple, reasonable accommodations to continue performing her job.  J. Crew and its senior executives, including Ms. Wadle and Chief Operating Officer ("COO"), Michael Nicholson, did not care.  They forced Ms. DiLorenzo to work through her medical leave after surgery and refused to engage with her about her accommodations requests, as required by law.  Moreover, Defendants humiliated Ms. DiLorenzo because of her condition, segregating her during a board meeting so that she could hear not what was going on.

4.     Ms. DiLorenzo's decision to protest Defendants' unlawful conduct and assert her rights only made things worse.  She complained to Mr. Nicholson and Human Resources ("HR") about how she was treated at the board meeting.  A few short months later, J. Crew fired Ms. DiLorenzo without any substantive reason, claiming that it was going in a "different direction."  Indeed, Mr. Nicholson thereafter admitted that J. Crew no longer wanted Ms. DiLorenzo as General Counsel because she "ha[d] now asserted claims against the Company."

5.     Defendants' conduct violated the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"), the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL").

## ADMINISTRATIVE PROCEDURES

6.     Contemporaneous with the filing of this Complaint, Plaintiff will file a Charge of Discrimination (the "Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

("ADA").  Upon issuance of a Notice of Right to Sue or other adjudication of the Charge, Plaintiff shall amend her claims under the ADA.[1]

7.      Pursuant to NYCHRL § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel within ten days of its filing, thereby satisfying the notice requirements of this action.

8.      Plaintiff has complied with all other prerequisites to filing this action.

## JURISDICTION AND VENUE

9.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the deprivation of Plaintiff's rights under federal law.  This Court has supplemental subject matter jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367(a).

10.      The Court also has jurisdiction pursuant to 28 U.S.C. § 1332, as there is diversity of citizenship among the parties and this action involves an amount in controversy in excess of $75,000, excluding interests and costs.

11.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred there.  J. Crew has business operations located in this District, and Plaintiff's employment and performance occurred in this District.

---

[1]      Plaintiff also intends to amend her complaint to add a claim pursuant to Wieder v. Skala, 80 N.Y.2d 628 (1992).  She will do so after consulting with J. Crew.  See Fischman v. Mitsubishi Chem. Holdings Am., Inc., No. 18 Civ 8188 (JMF), 2019 WL 3034866 (S.D.N.Y. July 11, 2019) (in-house counsel permitted to pursue claims involving confidential information).

## PARTIES

12.     Plaintiff is the former General Counsel of J. Crew.  At all relevant times, Plaintiff was an "employee" and/or "eligible employee" under all applicable statutes.  Plaintiff resides in Illinois.

13.     Defendant J. Crew is a Delaware-registered company with its headquarters at 225 Liberty Street, New York, NY 10281.  At all relevant times, Defendant was an "employer" and/or "covered employer" under all applicable statutes.

14.     Defendant Wadle is the CEO of J. Crew.  At all relevant times, Ms. Wadle met the definition of Plaintiff's "employer" under all applicable statutes.  Upon information and belief, Ms. Wadle is a resident of New York.

15.     Defendant Nicholson is the COO of J. Crew.  At all relevant, Mr. Nicholson met the definition of Plaintiff's "employer" under all applicable statutes.  Upon information and belief, Mr. Nicholson is a resident of New York.

## FACTS

### I.     BACKGROUND

16.     Ms. DiLorenzo is an accomplished attorney and corporate executive with a strong record of performance.

17.     From 1989 to 1999, Ms. DiLorenzo worked in private practice, handling commercial litigation and bankruptcy matters.

18.     From 1999 to 2015, she worked in various in-house counsel positions of increasing responsibility at Sears, Roebuck and Co. and Sears Holding Management Corp., rising to the position of Vice President, Deputy General Counsel and Chief Global Compliance Officer,

in which she held dual roles, managed multiple teams and supported multiple functional business areas for a large, publicly traded company.

19.     In 2015, J. Crew recruited Ms. DiLorenzo.  While living in Chicago, Ms. DiLorenzo traveled to New York weekly to perform her job.  She was widely recognized as an excellent leader and strong performer who successfully led the legal team through the Company's most turbulent years, including debt restructuring and a Chapter 11 bankruptcy.

## II.     MS. DILORENZO'S DISABILITY, REQUESTS FOR ACCOMMODATION AND MEDICAL LEAVE

20.     In June 2020, during the bankruptcy proceedings and the pandemic, Ms. DiLorenzo became disabled.  She suffered from SSHL, which caused her to become deaf in her right ear, developed tinnitus (a constant and debilitating "shrill" and "leaf blower" sound) and vertigo, among other symptoms.

21.     Ms. DiLorenzo notified her then-boss, Chief Administrative Officer Lynda Markoe, of her condition and the need to take days off intermittently for medical appointments, including visiting the Mayo Clinic for evaluation and treatment.

22.     Ms. DiLorenzo also requested an additional accommodation: that, once the Company returned to in-person work, she be permitted to work remotely from Chicago because her condition made it difficult, if not impossible, to travel.  J. Crew granted the accommodation, acknowledging that Ms. DiLorenzo could perform the essential functions of her job remotely.

23.     During this time—despite her disability—Ms. DiLorenzo successfully navigated J. Crew as it emerged from bankruptcy in less than six months.

24.     J. Crew was able to significantly lighten its debt load, converting more than $1.6 billion of debt into stock.  At the time, Company executives boasted that J. Crew had been "reinvigorated" and was "well-positioned for long term growth."

25.     In or around October/November 2020, after Ms. Markoe left the Company, Ms. DiLorenzo informed her new boss, Mr. Nicholson, that she had been managing a serious medical condition since June 2020.

26.     Ms. DiLorenzo explained, among other things, that she needed a medical leave for cochlear implant surgery, which typically requires a four-to-six-week recovery period.  Mr. Nicholson appeared unconcerned about Ms. DiLorenzo's condition; rather, he wanted to know how many days Ms. DiLorenzo would be out of work.

27.     Worried about Mr. Nicholson's reaction, Ms. DiLorenzo stated that she would take only one week of medical leave for surgery during the Thanksgiving holiday and then evaluate how she felt.

28.     Mr. Nicholson reacted negatively, asking Ms. DiLorenzo whether she "really" needed even the week off.  Again, he wanted to know when she would return.  Ms. DiLorenzo explained the seriousness of her condition and the procedure.  Mr. Nicholson appeared unconvinced and again asked about her return.

29.     On November 23, 2020, the week of Thanksgiving, Ms. DiLorenzo underwent surgery.  True to form, Mr. Nicholson would not permit Ms. DiLorenzo to take the necessary medical leave.

30.     Rather, the day of Ms. DiLorenzo's surgery, when she should have been recovering, Mr. Nicholson called her.  He did not acknowledge her condition or medical leave; instead, he instructed Ms. DiLorenzo to perform work that day and over the remaining week of her medical leave.

31.     Realizing that Mr. Nicholson would not permit her to take the necessary leave to recover, Ms. DiLorenzo returned to full-time work on November 30, 2020, weeks short of the necessary recovery period.

32.     In November 2020, Ms. Wadle became the new CEO.  Things only became worse for Ms. DiLorenzo.

33.     Ms. Wadle wanted the Company's management to return to in-person work.  This concerned Ms. DiLorenzo because the one accommodation J. Crew granted her—remote work—appeared in jeopardy.

34.     Indeed, Ms. DiLorenzo had multiple conversations with Patti Thetgyi, Vice President of HR, explaining the challenge of weekly travel to New York because of her disability.  Ms. DiLorenzo had similar conversations with Mr. Nicholson.

35.     Afraid that the Company would rescind her remote accommodation or retaliate, Ms. DiLorenzo offered to be present for the Company's quarterly board meetings in New York.

36.     At no point did anyone from the Company engage with Ms. DiLorenzo about her accommodations as required by law.  Ms. DiLorenzo was instead left to manage the accommodations on her own, including having to notify her direct reports of her medical condition (which should have remained private) and her inability to travel.  Indeed, Ms. DiLorenzo broke down in tears as she explained her plight to her colleagues.

37.     To make matters worse, Company executives shamed Ms. DiLorenzo because of her disability.  In late July 2021, Ms. DiLorenzo traveled to New York for the Company's quarterly board meeting.  She was responsible for, among other things, recording meeting minutes.  Ms. DiLorenzo could perform this task by sitting at the main table, a location where she could read the speakers' lips and listen from her left side.

7

38.     Ms. Wadle's Chief of Staff, Tracy Bay, however, refused to provide even this simple accommodation, instead publicly directing Ms. DiLorenzo to sit off to the side and against the wall.

39.     Ms. DiLorenzo privately explained to Ms. Bay that she was deaf in one ear and needed to sit where she could hear the proceedings.  Ms. Bay did not care.  She continued to gesture at Ms. DiLorenzo to move away from main table and even moved Ms. DiLorenzo's belongings to the side, physically segregating Ms. DiLorenzo from her colleagues.  Ms. DiLorenzo felt humiliated.

40.     In August 2021, Ms. DiLorenzo complained to Mr. Nicholson, who was present at the board meeting yet did nothing to intervene.  She protested that while the Company boasted about its commitment to diversity and inclusion, it ignored her rights as a person with a disability.  Mr. Nicholson was indifferent and did not respond.

41.     Ms. DiLorenzo then complained to Chief Human Resources Officer Jose Davila who, like Mr. Nicholson, appeared unfazed.

42.     Concerned that the discriminatory treatment would continue, Ms. DiLorenzo requested that the Company provide Ms. Bay with coaching.  Mr. Davila did not respond and seemed annoyed that Ms. DiLorenzo was upset.

43.     Eventually, Ms. Bay was forced to "apologize" to Ms. DiLorenzo by reading from a prepared statement.  But this insincere effort hardly remedied the problem and the abuse continued.

44.     Specifically, Ms. Bay made it a point to emphasize Ms. DiLorenzo's hearing loss during meetings by interrupting the proceedings and asking, in a loud mocking tone, "can you

hear" or "Maria, do you have a question," even when there was no such indication from Ms. DiLorenzo.

45.     Mr. Davila became increasingly dismissive of Ms. DiLorenzo after her protected complaints.

46.     Ms. DiLorenzo's fate had been sealed.  Only a few months later, J. Crew inexplicably fired Ms. DiLorenzo, claiming—falsely—that the Company was purportedly moving in a "new direction."

**III.    J. CREW FIRES MS. DILORENZO**

47.     On November 30, 2021, Mr. Nicholson and Mr. Davila fired Ms. DiLorenzo.

48.     Tellingly, Mr. Nicholson admitted that he did not have any issues with Ms. DiLorenzo's performance.

49.     To the contrary, he praised Ms. DiLorenzo for being a "really awesome partner." Nevertheless, Mr. Nicholson contended that J. Crew decided to go in a "different direction."

50.     To remove Ms. DiLorenzo without raising any red flags, Mr. Nicholson insisted that Ms. DiLorenzo agree on "messaging."

51.     The messaging, of course, would require that Ms. DiLorenzo not disclose any of her concerns about the Company's unlawful conduct and waive her legal rights to bring claims against the Company.

52.     Mr. Nicholson told Ms. DiLorenzo that she would remain General Counsel and continue to perform her duties until December 31, 2021.

53.     On December 7, 2021, Ms. DiLorenzo protested, in writing, that she was the victim of discrimination and retaliation.

54. Without conducting any investigation as required by J. Crew's policies, Mr. Nicholson shot back only a few hours later summarily denying any wrongdoing. He instead pressed Ms. DiLorenzo to sign the agreement, thus waiving her legal rights and keeping the Company's wrongdoing secret.

55. On December 10, 2021, Ms. DiLorenzo, this time through counsel, protested to J. Crew that she was the victim of discrimination and retaliation.

56. J. Crew promptly retaliated again. A few days later, on December 14, 2021, Mr. Nicholson wrote to Ms. DiLorenzo that her "employment as General Counsel is terminated" because "you have now asserted claims against the Company."

57. J. Crew replaced Ms. DiLorenzo with her direct report who did not suffer from a disability, seek any accommodations or complain about unlawful treatment.

**FIRST CAUSE OF ACTION**
**(Discrimination in Violation of NYSHRL)**
***Against all Defendants***

58. Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

59. By the actions described above, Defendants discriminated against Plaintiff based on her disability in violation of the NYSHRL, including failing to provide reasonable accommodations.

60. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled an award of monetary damages and other relief.

61. As a direct and proximate result of the unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited

to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

62.     Defendants' discriminatory actions were willfully negligent, reckless or committed with a conscious or reckless disregard of Plaintiff's rights under the NYSHRL.

**SECOND CAUSE OF ACTION**
**(Retaliation in Violation of NYSHRL)**
***Against All Defendants***

63.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

64.     By the actions described above, Defendants retaliated against Plaintiff for protesting discrimination on the basis of her disability, as well as seeking reasonable accommodation for her disability.

65.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

66.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

67.     Defendants' retaliatory actions were willfully negligent, reckless or committed with a conscious or reckless disregard of Plaintiff's rights under the NYSHRL.

### THIRD CAUSE OF ACTION
### (Discrimination in Violation of NYCHRL)
### *Against All Defendants*

68.     Plaintiff hereby repeats and re-alleges each and every allegation in the preceding paragraphs, as though set forth fully herein.

69.     By the actions described above, Defendants discriminated against Plaintiff based on her disability in violation of the NYCHRL, including, failing to engage in a cooperative dialogue and provide reasonable accommodations.

70.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, for which she is entitled to an award of monetary damages and other relief.

71.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

72.     Defendants' discriminatory actions were willfully negligent, reckless or committed with a conscious or reckless disregard of Plaintiff's rights under the NYCHRL.

### FOURTH CAUSE OF ACTION
### (Retaliation in Violation of NYCHRL)
### *Against All Defendants*

73.     Plaintiff hereby repeats, reiterates and re-alleges each and every allegation as contained in each of the preceding paragraphs as if fully set forth herein.

74.     By the actions described above, Defendants retaliated against Plaintiff for protesting discrimination on the basis of her disability, as well as seeking reasonable accommodation for her disability.

75.     As a direct and proximate result of the unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages and other relief.

76.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

77.     Defendants' retaliatory actions were willfully negligent, reckless or committed with a conscious or reckless disregard of Plaintiff's rights under the NYCHRL.

**FIFTH CAUSE OF ACTION**
**(Interference in Violation of FMLA)**
***Against All Defendants***

78.     Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

79.     By the actions described above, Defendants unlawfully interfered with Plaintiff's FMLA rights.

80.     As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer, monetary and/or economic harm for which she is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

81.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

82.     Defendants' unlawful actions constitute reckless intentional, malicious, willful and wanton violations of the FMLA.

### SIXTH CAUSE OF ACTION
**(Retaliation in Violation of FMLA)**
***Against All Defendants***

83.     Plaintiff repeats, reiterates and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

84.     By the actions described above, Defendants retaliated against Plaintiff for exercising her FMLA rights.

85.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which she is entitled to an award of monetary damages, liquidated damages, reasonable attorneys' fees and expenses, and other relief.

86.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress, including, but not limited to, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

87.     Defendants' unlawful actions constitute reckless intentional, malicious, willful and wanton violations of the FMLA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enters judgment in her favor and against the Defendants for the following relief:

A.     A declaratory judgment that Defendants violated federal, state and city laws;

B.     An award of economic damages;

C.     An award of compensatory damages;

D.     An award of punitive damages;

E.     An award of liquidated damages;

F.     Prejudgment interest on all amounts due;

G.     An award of reasonable attorneys' fees and costs; and

H.     Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

Dated: December 16, 2021
       New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
       Douglas H. Wigdor
       Valdi Licul

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
dwigdor@wigdorlaw.com
vlicul@wigdorlaw.com

*Counsel for Plaintiff*

15